AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the Matter of the Search of

FOUR ELECTRONIC DEVICES IDENTIFIED
IN ATTACHMENT A AND CURRENTLY
IN THE CUSTODY OF THE ST. LOUIS
METROPOLITAN POLICE DEPARTMENT

)
)
)
)
)
)

**FILED UNDER SEAL**

Case No. 4:20-MJ-8106 SRW

SIGNED AND SUBMITTED TO THE COURT FOR
FILING BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I, Mark A. Wynn                              , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

See Attachment A

located in the _____EASTERN_____ District of _____MISSOURI_____ , there is now concealed

SEE ATTACHMENT A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance (fentanyl and heroin) |
| 18 U.S.C. § 924(c)(1)(A) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the foregoing is true and correct.

_____
*Applicant's signature*

Special Agent Mark A. Wynn
Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: _____11/6/2020_____

_____
*Judge's signature*

City and state: ___St. Louis, MO___

Honorable Stephen R. Welby, U.S. Magistrate Judge
*Printed name and title*

AUSA: Zachary Bluestone

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | ) | |
| FOUR ELECTRONIC DEVICES IDENTIFIED | ) | No. 4:20-MJ-8106 SRW |
| IN ATTACHMENT A AND CURRENTLY | ) | |
| IN THE CUSTODY OF THE ST. LOUIS | ) | **FILED UNDER SEAL** |
| METROPOLITAN POLICE DEPARTMENT | ) | |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
UNDER RULE 41 FOR A SEARCH WARRANT**

I, Mark A. Wynn, being first duly sworn, hereby depose and state as follows:

**Introduction**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – four electronic devices – described in Attachment A, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been since April 2007. I am currently assigned to the St. Louis Field Office Group I. I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator Training Program, the Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Basic Training Program and the Missouri Department of Public Safety Training Academy. I am a graduate of Central Missouri University with a Bachelor of Science degree in criminal justice. I am also a graduate of Lindenwood University with a Master of Science degree in criminal justice administration. During the course of my law enforcement experience, I have participated in numerous investigations involving firearms and controlled substances, including complex investigations involving drug trafficking organizations dealing in fentanyl, methamphetamine,

heroin, marijuana, and criminal street gangs.  I also have participated in numerous investigations involving possession of firearms in furtherance of drug trafficking.  As an ATF Agent, I am empowered to investigate violations of federal firearms, arson and explosive laws.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute fentanyl and heroin) and Title 18, United States Code, Section 924(c)(1)(A) (possession of a firearm in furtherance of drug trafficking crimes) have been committed by Theodise PERKINS and Stephan PERKINS, as well as other persons known and unknown.  There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

**Location to be Searched and Identification of the Devices**

5.     The properties to be searched are four devices described as:

   a.   An Apple iPhone 11 wireless telephone, black in color, with IMEI 353238104340715 and a Sprint SIM card ("Device #1");

   b.   An Alcatel Tetra wireless telephone, black in color with a cracked screen, with IMEI 015174003240732 and a Cricket SIM card ("Device 2");

   c.   An LG Stylo wireless telephone, black in color with a chipped screen protector and a blue-gray case, with MEID 089458280009859604 ("Device 3");

      d.   An Apple iPhone 6 wireless telephone, silver in color with a cracked screen protector, with IMEI 355397078821486 and a Sprint SIM card ("Device 4")

(hereinafter "the Devices"). The Devices are each depicted in photographs in Attachment A. Additionally, Devices 1, 2, and 3 are identified as "Prop. # 10" by the St. Louis Metropolitan Police Department ("SLMPD") report in case 20-010597. Device 4 is separately identified as "Prop. # 7" in the same report. The Devices are currently in the lawful possession of the SLMPD.

      6.    The applied-for warrant would authorize the forensic examination of the devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## **Technical Terms**

      7.    Based on my training and experience, I use the following technical terms to convey the following meanings:

      a.   Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading

information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. A wireless telephone may have wireless connection capabilities such as Wi-Fi and Bluetooth.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some

GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication Devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8.    Based on my training, experience, and research, as well as my familiarity with iPhones and similar smartphone devices, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation Device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Devices.

**Probable Cause**

9.     Currently, I am part of an experienced team, including other law enforcement officials, conducting an investigation into the illicit narcotics trafficking and weapons violations, relative to Theodise and Stephan PERKINS, which occurred on March 4, 2020, within the Eastern District of Missouri.

10.    On March 4, 2020, the SLMPD arrested Theodise and Stephan PERKINS for several charges, including Unlawful Possession of a Firearm, Delivery of a Controlled Substance and Resisting Arrest, following a high-speed chase.  In that incident, SLMPD officers attempted to conduct a traffic stop on a black Nissan Maxima, which was travelling west on West Florissant Avenue, for failing to affix a Missouri license plate to the front bumper.  Upon activating their emergency equipment, the vehicle, being driven by Stephan PERKINS, failed to yield to the officers and accelerated at a high rate of speed in an effort to evade police, at one point crossing into oncoming traffic.  In light of the danger posed by this erratic driving, the SLPMPD eventually deployed a spike strip, which succeeded in deflating at least one of the vehicle's tires.  After driving for more than another mile, the vehicle suddenly stopped.  Theodise PERKINS exited the front passenger seat of the vehicle as it slowed down and began running on foot across a shopping center parking lot while clutching a satchel close to his body as if it contained a weapon.  The vehicle then accelerated again.

11.    As officers engaged in a foot pursuit of Theodise PERKINS, they observed him discard the satchel just prior to being taken into custody in the area the U.S. Bank, located at 8031 West Florissant Avenue.  Officers retrieved the satchel and observed a firearm described as a Sturm Ruger and Co., .45 Auto caliber, semi-automatic pistol.  Officers also located within the satchel a large clear bag, containing several smaller plastic bags filled with white powder.  A number of colored capsules were discovered also containing white powder.  Further inspection of the bag revealed two Dormin bottles, one wireless telephone (Device 4) with white powder residue, and a digital scale covered with white powder residue.

12.    The vehicle was stopped in the same shopping center, near 8021 West Florissant Avenue, and Stephan PERKINS was taken into custody.  Officers observed, in plain view on the

passenger's seat floorboard, a firearm described as a Glock, 30 Gen4 model, .45 Auto caliber, semi-automatic pistol, which had a high-capacity magazine. Behind the driver's seat, officers located a black backpack that contained two pink Dormin pills, one purple and clear pill containing a white powder along, and a digital scale with white residue. The drug-trafficking evidence recovered from the backpack was consistent with the items in the satchel recovered from Theodise PERKINS. Three additional cell phones (Devices 1, 2, and 3) were also located inside the vehicle.

13.    The firearms and suspected controlled substances were subsequently examined at the SLMPD Crime Laboratory. When test-fired, the firearms functioned as designed. Additionally, the pistol seized from Theodise PERKINS's satchel was determined to be stolen. The white powder in both the satchel and the black backpack was confirmed to contain a mixture with detectable amounts of both fentanyl and heroin, with a total weight of 19.77 grams—a quantity which, in my training and experience, is consistent with an intent to distribute these controlled substances.

14.    During my career as a law enforcement officer, I have conducted a number of narcotics investigations, including those involving urban drug trafficking organizations as well as conspiracy investigations involving armed robberies of narcotics traffickers. Based on my training and experience in such investigations, I know that armed drug traffickers communicate with each other utilizing wireless telephones to facilitate the overall scheme of their illicit endeavors. In order to be successful, these individuals communicate via wireless telephones to orchestrate the transportation of controlled substances; to manage and maintain contact with drug couriers; to maintain contact with lower level distributors in their day-to-day operations; to maintain contact with safe house operators where narcotics are stored; and to coordinate the return movement of the drug derived profits back to the sources of supply. Additionally, guns are tools of the drug trade, and drug traffickers commonly use them for protection and to otherwise further narcotics sales.

15.     I also know from prior investigations and subsequent debriefings that persons such as those described herein are known to compartmentalize the use of multiple electronic devices. As an example, a subject will use a certain electronic device to contact sources of supply, another electronic device to contact couriers, and other electronic devices to contact underlings, so forth and so on. Based on my training and experience, I know these measures are employed to thwart law enforcement's ability to detect persons engaged in criminal activity and conduct electronic surveillance on co-conspirators. As a result, the possession of multiple cell phones in connection with distribution quantities of controlled substances is itself evidence of drug trafficking, and such cell phones will contain evidence of illicit narcotics transactions.  Based on the number of electronic devices seized during this investigation, investigators believe that the targets described herein may be compartmentalizing the use of their electronic devices, as related above.

16.     I also know based on my training and experience that individuals involved in the trafficking of narcotics use devices such as the Devices to facilitate their overall schemes and their illicit endeavors.  To make it easier for narcotics traffickers to communicate with one another, their phones and other devices often contain stored telephone numbers, programmed names, addresses, and encrypted codes and names.  I also know that the phones and other communication devices of narcotics traffickers often contain voicemails, text messages, photographs, and emails relating to communications with co-conspirators; meeting locations as well as the telephone numbers of co-conspirators who have called or been called by the device; and GPS information  and directions related to meeting locations.  Investigators believe that such information and other evidence related to the criminal offenses under investigation are stored on the Devices.

17.     The Devices are currently in the lawful possession of the SLMPD.  In my training and experience, I know that the Devices have been stored in a manner in which their contents are,

to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the SLMPD.

## **Electronic Storage and Forensic Analysis**

18.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

19.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

team and passed along to investigators. Whether data stored on a wireless telephone is evidence may depend on other information stored on the device and the application of knowledge about how the device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

<u>**Conclusion**</u>

21.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

22.    Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

23.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and

search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate (e.g., post them publicly online through the carding forums). Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

I state under the penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Special Agent Mark A. Wynn
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41, on November 6, 2020.

HONORABLE STEPHEN R. WELBY
United States Magistrate Judge

## <u>ATTACHMENT A</u>

**Device 1**:  An Apple iPhone 11 wireless telephone, black in color, with IMEI 353238104340715 and a Sprint SIM card, as depicted in attached photographs 1A-1D.

**Device 2**:  An Alcatel Tetra wireless telephone, black in color with a cracked screen, with IMEI 015174003240732 and a Cricket SIM card, as depicted in attached photographs 2A-2D.

**Device 3**:  An LG Stylo wireless telephone, black in color with a chipped screen protector and a blue-gray case, with MEID 089458280009859604, as depicted in attached photographs 3A-3D.

**Device 4**: An Apple iPhone 6 wireless telephone, silver in color with a cracked screen protector, with IMEI 355397078821486 and Sprint SIM card, as depicted in attached photographs 4A-4E.

Devices 1, 2, and 3 are collectively identified as "Prop. # 10" by the St. Louis Metropolitan Police Department ("SLMPD") report in case 20-010597.  Device 4 is separately identified as "Prop. # 7" in the same report.  The Devices are currently in the possession of the SLMPD.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.



**Photograph 1A**



**Photograph 1B**



**Photograph 1C**



**Photograph 1D**



**Photograph 2A**



**Photograph 2B**



**Photograph 2C**



**Photograph 2D**



**Photograph 3A**



**Photograph 3B**



**Photograph 3C**



**Photograph 3D**



**Photograph 4A**



**Photograph 4B**



**Photograph 4C**



**Photograph 4D**



**Photograph 4E**

## ATTACHMENT B

1.    All records on the Devices described in Attachment A that relate to violations of Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute fentanyl and heroin) and Title 18, United States Code, Section 924(c)(1)(A) (possession of a firearm in furtherance of drug trafficking crimes) and involve Theodise PERKINS and Stephan PERKINS, from January 1, 2020 to the date of the seizure, including:

   a.   Any information related to the possession, purchase, manufacture, or sale of fentanyl, heroin, or other controlled substances;

   b.   Any information related to the possession, purchase, or use of firearms;

   c.   Lists of customers and related identifying information;

   d.   Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   e.   Any information related to the sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   f.   Any information recording Theodise or Stephan PERKINS's schedule or travel;

   g.   All bank records, checks, credit card bills, account information, and other financial records, as well as any information relating to drug proceeds.

2.    Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage (such as flash memory or other media that can store data) and any photographic form.